IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CECIL B.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 19-2675-JWL |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).[2] Finding error in the Administrative Law Judge's (ALJ) evaluation of the medical opinion of Plaintiff's neurosurgeon, Dr. Holladay, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING for further consideration.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] Plaintiff's Brief is unclear that Plaintiff seeks review of the ALJ's denial of DIB pursuant to Title II of the Act, but Plaintiff applied for both, the Commissioner denied both, and the Commissioner does not assert that Plaintiff has waived consideration of DIB.

**I.     Background**

Plaintiff filed applications for DIB and SSI on October 18, 2016.  (R. 13, 180-93). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erroneously assessed Plaintiff's residual functional capacity (RFC) in several respects.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff acknowledges the ALJ accorded significant weight to the opinions of the state agency medical consultants, Dr. Marty and Dr. Korte, but argues the ALJ did not recognize the opinions were projected opinions about Plaintiff's abilities at a later date— July 7, 2017—12 months after his onset date, July 8, 2016.  (Pl. Brief 26-27).  He argues Dr. Marty and Dr. Korte did not review any medical records from 12 months after Plaintiff's alleged onset date and could not express an accurate opinion of his capabilities and limitations after that date.  Id. at 27-28.  Plaintiff argues the ALJ discounted Plaintiff's allegations of limitations resulting from his symptoms but did not explain how Plaintiff's allegations are inconsistent with the record evidence.  Id. at 28-29.

4

Plaintiff argues the ALJ picked and chose among the medical records, selecting evidence supportive of his position while ignoring evidence supporting a finding of disability. (Pl. Br. 30). He argues the ALJ did not consider the context of the records he relied upon and suggests what the proper context is. Id. at 30-31. Plaintiff notes the ALJ found Dr. Holladay's records revealed his condition improved after surgery and he was able to ambulate, but argues that he ignored Dr. Holladay's concurrent opinion that Plaintiff's severe pain continued, and he was disabled and unable to work. Id. at 31-32. He argues the ALJ erred in failing to discuss Dr. Holladay's opinion, accord it weight, and explain his bases for the weight accorded. Id. at 31. Finally, Plaintiff argues the ALJ's evaluation of Plaintiff's allegations of symptoms did not properly evaluate his daily activities or all the credibility factors in combination. Id. at 36.

The Commissioner responds that the RFC assessed is supported by substantial evidence. He argues the ALJ appropriately accorded significant weight to the opinions of Dr. Marty and Dr. Korte and he "did not rely solely on the[se] state agency opinions but rather on the record as a whole." (Comm'r Br. 11). He argues Plaintiff did not explain why a forward-looking opinion is erroneous or that the subsequent evidence revealed a worsening condition or greater limitations. Id. He argues the failure to specifically weigh Dr. Holladay's opinion "was at most a harmless error." Id. at 12. He argues that although the ALJ did not weigh Dr. Holladay's opinion he discussed the treatment note in which it was contained and accorded significant weight to Dr. Korte's opinion which explained why the opinion was not persuasive. Id. at 13. He concludes,

> In other words, even if the Court were to find the ALJ's decision was technically imperfect because it did not discuss Dr. Holladay's statement, the ALJ's overt reliance on the opinion of Dr. Korte, who did, renders the decision sufficient to trace the path of the ALJ's reasoning.

(Comm'r Br. 13).

The Commissioner argues Plaintiff's arguments that the ALJ picked and chose among the record evidence "are thinly veiled attempts to request that the Court reweigh the evidence." Id. at 14. He suggests the ALJ appropriately considered the regulatory factors for evaluating Plaintiff's allegations and specifically argues the ALJ viewed two ways in which Plaintiff's daily activities were inconsistent with the record—they suggested lesser limitations than Plaintiff alleged, and the activities reported at the hearing were more restricted than earlier reports. Id. at 10.

As the parties agree, the ALJ did not address the treating source medical opinion of Dr. Holladay. The court agrees with Plaintiff that in the circumstances present here it cannot find the error is harmless and it must remand for proper and full consideration of the evidence. As the Commissioner argues, much of Plaintiff's Brief is an apparent attempt to convince the court to reweigh the evidence and substitute its judgment for that of the Commissioner. (Comm'r Brief 14). However, despite its unclear and rambling "stream of consciousness" style, Plaintiff's Brief clearly argues, and the Commissioner agrees, that the ALJ failed to address Dr. Holladay's opinion, weigh it, and explain the weight assessed. (Pl. Br. 31-32). At least that much of the Brief alleges error, without suggesting the court substitute its judgment for that of the Commissioner. Moreover, as Plaintiff's Reply Brief argues, the Commissioner's arguing several bases that the ALJ's

6

ignoring Dr. Holladay's was harmless error amounts to post hoc rationalization to support the ALJ's decision.  (Reply 5).

As noted in the court's discussion of the legal standard applicable to judicial review of a decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905.  Moreover, a decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence.  42 U.S.C. § 405(g).  And, by considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).  Plaintiff should focus on pointing out the error in the Commissioner's analysis, not on explaining what the "correct" analysis would reveal; and the Commissioner should focus on that the ALJ did, not what he might have done.

Here, in an eight-page decision the ALJ determined Plaintiff is able to perform a limited range of light work, possessing the ability to walk and or stand for six hours and to sit for six hours in an eight-hour workday.  (R. 16).  In his RFC assessment he stated he considered Plaintiff's allegations of symptoms in accordance with the regulatory standard and considered the opinion evidence in accordance with the regulatory standard.  Id. at 16-17.  He recognized Plaintiff is obese and stated he considered obesity in

7

accordance with the applicable Social Security Ruling. (R. 17). He stated he found Plaintiff's allegations of symptoms inconsistent with the record evidence "for the reasons explained in this decision." Id. For the next two pages, he summarized the record evidence, explained his evaluation of inconsistencies in Plaintiff's allegations of symptoms, and explained his evaluation of the opinions of the state agency medical consultants, Dr. Marty and Dr. Korte. Id. at 17-19.

As relates to the issues presented here, the ALJ cited to the treatment note in which Dr. Holladay stated his opinion twice:

> In Visits [sic] with Heartland neurosurgery in February and March 2017, the claimant alleged that following his microsurgery disc surgery, his condition had improved, and he was able to ambulate. However, the claimant stated that his right leg pain had not resolved. The claimant noted that standing and walking increased pain. In a physical examination dated in March 2017, the claimant had some restricted range of motion in his lumbar spine and mild to moderate tenderness with palpitation. Straight leg raise was negative bilaterally. The claimant also had normal sensory and reflexes. The claimant did present with an antalgic gait favoring his right let [sic]. (Exhibit 8F/5 [(R. 442)]).

(R. 18).

> The claimant's objective physical examinations reveal some ongoing tenderness in the lumbar spine area and some restricted range of motion. The claimant also presented with an antalgic gait and favored his right leg (Exhibit 8F/5 [(R. 442)]). Straight leg raise was negative.

(R. 19).

The ALJ explained his evaluation of Dr. Marty's and Dr. Korte's opinions:

> I have considered the opinions of the State agency medical consultants who opined that the claimant was capable of light work (Exhibit 1A/2A/7A/8A). The findings are consistent with the objective medical evidence, and physical examinations. Therefore, I afford the opinions significant weight. However, I have reduced the opinion for the claimant's subjective

8

complaints and added additional limitations to the residual functional capacity.

Id.

Dr. Holladay's treatment note at issue here states, in relevant part:

Cecil was seen today in the office.  He is 55 years of age.  6 months ago he underwent lumbar microsurgery for foraminal disc on the right at L4-5.  Prior to surgery his pain was extremely severe to the point that he had difficulty ambulating.  After surgery he did improve and he was able to ambulate but he is [sic (his?)] constant right leg pain never resolved.  He says that currently he has 3-4/10 back pain along with that ever 10 right leg pain.  The pain tends to radiate into the right anterior thigh and anterior leg.  Standing and walking increases pain.  Sitting gives him some relief but he is only able to sit for short time.  If I [sic (likely "Iffy" dictated)] physical therapy after surgery which he said did not help significantly.

\*\*\*

MUSCULOSKELETAL:  lumbar paraspinal muscle bulk is normal, restricted ROM [(range of motion)] of lumbar spine, mild to moderate tenderness of lower lumbar spine with palpation, normal range of motion of the lower extremities bilaterally.

EXTREMITIES:  no clubbing, cyanosis, or edema.

NEUROLOGIC:  alert and oriented x 3, normal recent and remote memory, strength 5/5 in bilateral lower extremities, sensory was intact to light touch in the lower extremities bilaterally except for decrease in the right anterior thigh, reflexes were present and symmetric in bilateral lower extremities except for an absent right knee jerk, negative straight leg raising bilaterally, antalgic gait favoring his right leg.

**Assessment:**

Assessment:

Cecil had a foraminal disc and required lumbar surgery 6 months ago.  Although he made some improvement following the surgery he continues to have very severe right lumbar radicular pain.  I do not feel he will ever be able to return to his previous occupation.  Considering the pain he is experiencing I do not feel he could be gainfully employed.

(R. 442-43).

When comparing the treatment note at issue with the ALJ's summary of the note, the court notes the ALJ stated the examination showed "normal sensory and reflexes," but the treatment note states, "except for decrease [sensation] in the <u>right anterior</u> thigh" and "except for an absent <u>right</u> knee jerk," which the court finds are material omissions considering Dr. Holloday's findings of "very severe right lumbar radicular pain," and that the pain "tends to radiate into the right anterior thigh and anterior leg." <u>Id.</u> at 442 (emphases added).  Moreover, and most importantly, the examination notes to which the ALJ cites in his decision appear directly above Dr. Holladay's assessment in which he states his finding of <u>very severe</u> radicular pain and opines that Plaintiff cannot return to his previous occupation or be gainfully employed.

The Commissioner argues that the failure to discuss and weigh Dr. Holladay's opinion was harmless error because the ALJ accorded significant weight to Dr. Korte's opinion which explained why Dr Holliday's opinion was not persuasive.  While it might be argued that the ALJ considered Dr. Korte's opinion and discounted Dr. Holladay's opinion in accordance with Dr. Korte's opinion, there is simply no evidence in the decision to suggest that is the case.  The only reference to the medical consultants' opinions in the decision is that quoted above wherein the ALJ noted they opined Plaintiff could perform light work, found their opinions consistent with the medical evidence and physical examinations, and stated he had assessed additional limitations based upon Plaintiff's allegations.

Here, the ALJ said nothing of Dr. Holladay's opinion, did not acknowledge the examination finding of absent right knee jerk, provided only the briefest of decisions at

eight pages total, and stated Plaintiff's "representative provided a recent MRI of his shoulder that also revealed some issues" without discussing those issues or even stating what they are.  In such circumstances, for the court to accept the Commissioner's harmless error analysis would be to usurp the ALJ's duty, weigh the evidence, and make the disability decision itself.  That, it may not do.  Remand is necessary for the ALJ to consider all the evidence, weigh the opinion evidence, and explain his evaluation.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING for further consideration.

Dated September 18, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**